IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.   1:16-CR-73 (MAD) |
| | ) | |
| **v.** | ) | **Plea Agreement** |
| | ) | |
| **HILARIO RENATO MENDOZA** | ) | |
| **BELTRAN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

The United States of America, by and through its counsel of record, the United States Attorney for the Northern District of New York, and defendant **HILARIO RENATO MENDOZA BELTRAN** (hereinafter "the defendant"), by and through the defendant's counsel of record, hereby enter into the following plea agreement pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure:

1)  **The Defendant's Obligations:**

    a)  **Guilty Plea:** The defendant will change the defendant's previously-entered plea of "not guilty" and plead guilty to Count 1 of the First Superseding Indictment in Case No. 1:16-CR-73 (MAD) charging conspiracy to possess with the intent to distribute and to distribute a controlled substance (cocaine), in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), and Count 2 of the First Superseding Indictment charging conspiracy to commit promotional and international promotional money laundering, in violation of 18 U.S.C. §§ 1956(a)(2)and (h).

    b)  **Special Assessment:**  The defendant will pay an assessment of $100 per count of conviction pursuant to 18 U.S.C. § 3013.  The defendant agrees to deliver a check or money order to the Clerk of the Court in the amount of $200, payable to the U.S. District Court, at the time of sentencing.

c) **Compliance with Other Terms of Agreement:** The defendant will comply in a timely manner with all of the terms of this plea agreement.

d) **Forfeiture:** Pursuant to 18 U.S.C. § 982(a)(1) and 21 U.S.C. § 853(p), the defendant will consent to entry of an order directing forfeiture to the United States of the property described in the Second Forfeiture Allegation in the First Superseding Indictment described above, or to any substitute assets, or to a money judgment, all as more fully set out below:

   (1) Money judgment in the amount of no less than $472,000.

   (2) If any of the property described above, as a result of any act or omission of the defendant, either: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p) and Fed. R. Crim. P. 32.2(e).

e) **Access to Records:** The defendant will provide any privacy waivers, consents, or releases requested by the United States Attorney's Office to access records to verify the defendant's financial disclosures. The defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information provided by the defendant to the U.S. Probation Office.

f) **No Transfer of Assets:** The defendant certifies that the defendant has made no transfer of assets in contemplation of this prosecution for the purpose of evading or defeating financial obligations that are created by this plea agreement and/or that may be imposed by the Court. In addition, the defendant promises not to make any such transfers in the future.

2) **The Government's Obligations:**

   a) **Non-prosecution for other offenses:** For so long as the defendant's guilty plea and the sentence remain in effect, the government will not seek other federal criminal charges against the defendant based on conduct described in the First Superseding Indictment in Case No 1:16-CR-73 (MAD) and/or in the paragraph of this agreement entitled "Factual Basis for Guilty Plea," occurring before the date on which the defendant signs this agreement. This agreement does not prevent the government from seeking charges based on other conduct.

   b) **Compliance with Other Terms of Agreement:** The government will comply in a timely manner with all of the terms of this plea agreement.

3) **Potential Maximum Penalties:** The defendant understands that the Court can impose the following maximum penalties for the offenses to which the defendant agrees to plead guilty and may be required to impose mandatory minimum terms of imprisonment, all as set out below

   a) **Maximum term of imprisonment:**

      (1) Count 1: Life imprisonment, pursuant to 21 U.S.C. § 841(b)(1)(A).

      (2) Count 2: Twenty (20) years, pursuant to 18 U.S.C. § 1956(a)(2)(A) and 1956(h).

   b) **Mandatory minimum term of imprisonment:**

      (1) Count 1: Ten (10) years, pursuant to 21 U.S.C. § 841(b)(1)(A).

   c) **Maximum fine:**

      (1) Count 1: $10,000,000 pursuant to 21 U.S.C. § 841(b)(1)(A).

      (2) Count 2: the greater of $500,000 or twice the value of the funds involved in the unlawful transfer, pursuant to 18 U.S.C. §§ 1956(a)(2) and 1956(h).

d) **Supervised release term:** In addition to imposing any other penalty, the sentencing court must require the defendant to serve a term of supervised release between 5 years and life, to begin after imprisonment. *See* 21 U.S.C. § 841(b)(1)(A). A violation of the conditions of supervised release during that time period may result in the defendant being sentenced to an additional term of imprisonment of up to 5 years.

e) **Other adverse consequences:** Other adverse consequences may result from the defendant's guilty plea as further described in paragraph F below.

4) <u>**Elements of Offenses:**</u> The defendant understands that the following are the elements of the offenses to which the defendant agrees to plead guilty. The defendant admits that the defendant's conduct satisfies each and every one of these elements.

<u>Count 1: Conspiracy to Possess With the Intent to Distribute and to Distribute a Controlled Substance (Cocaine) - 21 U.S.C. §§ 846 and 841(b)(1)(A)</u>

a) *First*, two or more persons conspired to knowingly or intentionally possess with the intent to distribute or to distribute a controlled substance (as described in Count 1 of the First Superseding Indictment);

b) *Second*, the defendant joined that conspiracy, either at its inception or sometime during its existence, knowing the purpose of the conspiracy and intending to help it succeed; and

c) *Third*, the conspiracy involved the distribution of or possession with the intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.

Count 2: Conspiracy to Commit Promotional and International Promotional Money Laundering - 18 U.S.C. §§ 1956(a)(2)and (h)

a) *First*, two or more persons conspired to transport, transmit and transfer, and attempt to transport, transmit, and transfer one or more monetary instruments and funds from a place in the United States to and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, that is, conspiracy to possess with intent to distribute and distribute controlled substances, in violation of Title 21, United States Code, Sections 846 and 841(a);

b) *Second*: the defendant joined that conspiracy, either at its inception or sometime during its existence, knowing the purpose of the conspiracy and intending to help it succeed.

5) **Factual Basis for Guilty Plea:** The defendant admits the following facts, that those facts demonstrate the defendant's guilt for the offenses to which the defendant is pleading guilty, and that there are no facts establishing a viable defense to those offenses:

a) Between August 2014 and March 30, 2016, a drug trafficking organization based in Montreal, Canada (hereinafter, the "DTO") led by coconspirator IRAKLIS HAVIARPOULIS collected the bulk cash monetary proceeds of illicit activities, including the sale of marijuana and ecstasy in the United States and cocaine in Canada (hereinafter the "bulk cash drug proceeds"). Members of the DTO dropped off bulk cash drug proceeds to couriers/coconspirators in the Northern District of New York, Montreal, and elsewhere who transported or wired the proceeds to Peru and elsewhere. The DTO then used the proceeds to purchase cocaine in Peru from CARLOS ALBERTO OCAMPO GARCIA. OCAMPO GARCIA, in turn, worked with the defendant and co-conspirator JOSE MAURICIO ORTIZ BOLANOS to obtain the proceeds from the DTO, purchase Peruvian

5

cocaine with those proceeds, and then facilitate the importation of the purchased cocaine into the United States and Canada, including through the Northern District of New York.

b) In late September 2014, HAVIAROPOULIS asked a confidential witness ("CW") to arrange for the pick-up of bulk cash drug proceeds in Kingston, New York, and its subsequent delivery to Lima, Peru. CW agreed in exchange for a ten percent commission.

c) On September 25, 2014, a courier delivered $127,500 in bulk cash drug proceeds to a U.S. undercover law enforcement officer in Kingston, New York. HAVIAROPOULIS provided CW with the contact information for OCAMPO GARCIA, and told CW that the money was to be used to purchase cocaine. CW then provided OCAMPO GARCIA with the contact information for the person who would deliver the proceeds, who in fact was a Peruvian undercover law enforcement officer (UC-1).

d) On October 9, 2014, the defendant drove and accompanied OCAMPO GARCIA and ORTIZ BOLANOS to a meeting with UC-1 at a café in Lima, Peru to coordinate the receipt of $114,750 in U.S. currency (representing $127,500 of bulk cash drug proceeds minus CW's ten percent commission) from the DTO for the purchase of cocaine. Through OCAMPO GARCIA, the defendant was aware that the U.S. currency was being used to purchase cocaine.

e) On October 10, 2014, UC-1 delivered $114,750 in U.S. currency to OCAMPO GARCIA in a hotel room in Lima, with the defendant and ORTIZ BOLANOS present. ORTIZ BOLANOS then used the $114,750 to purchase 39 kilograms of cocaine from associates of the defendant in Lima. The defendant facilitated the purchase, and was present when the cocaine was tested and re-packaged. The defendant and ORTIZ BOLANOS then delivered the 39 kilograms of cocaine to members of the DTO in Piura, a town on the

northeast coast of Peru where a clandestine airstrip was located, knowing that the ultimate destination of the cocaine was the United States and Canada.

f) In November 2014, HAVIAROPOULOS asked CW to arrange for the pick-up of bulk cash drug proceeds in New York and Massachusetts, and their subsequent delivery to Lima. Two couriers delivered a total of $88,000 in bulk cash drug proceeds to undercover law enforcement officers in New York and Massachusetts.

g) On November 12, 2014, the defendant and ORTIZ BOLANOS met with another Peruvian undercover law enforcement officer (UC-2) at a restaurant in Lima to coordinate delivery of the $88,000 in U.S. currency. They agreed that the defendant would meet UC-2 at a grocery store in Lima later that day. When UC-2 arrived at the grocery store, the defendant gestured to UC-2 and directed him through a passageway. In the middle of the passageway, UC-2 gave the defendant the bag with the $88,000 in U.S. currency. On the other side of the passageway, ORTIZ BOLANOS was waiting at a café, and ORTIZ BOLANOS took possession of the bag. The defendant and ORTIZ BOLANOS then delivered the proceeds to the same associates of the defendant who previously supplied 39 kilograms of cocaine to the DTO.

h) In late November 2014, HAVIAROPOULOS asked CW to arrange for the pick-up of bulk cash drug proceeds in Albany, New York, and Montreal, Canada, and to accept additional proceeds via wire transfer, all for subsequent delivery to OCAMPO GARCIA in Lima.

i) On December 17, 2014, UC-1 met with the defendant and ORTIZ BOLANOS at a mall in Lima, and gave ORTIZ BOLANOS $269,500 in U.S. currency intended for the purchase of 100 kilograms of cocaine. The defendant and ORTIZ BOLANOS then left the mall driving in an evasive manner. OCAMPO GARCIA then used the $269,500 to purchase

100 kilograms of cocaine from associates of the defendant and ORTIZ BOLANOS in Lima. The defendant and BOLANOS ORTIZ then arranged for delivery of the 100 kilograms of cocaine to members of the DTO in Piura, knowing that the ultimate destination of the cocaine was the United States and Canada.

j) The participation of the defendant in the conspiracy and the acts of others in furtherance of the conspiracy and reasonably foreseeable to the defendant involved at least 139 kilograms of cocaine.

6) **Sentencing Stipulations:**

Grouping of Counts 1 and 2

a) Because the defendant is pleading to both a count of money laundering (Count 2) and a count for the underlying offense (Count 1), the two counts shall be grouped pursuant to U.S.S.G. § 3D1.2(c) (Groups of Closely Related Counts). *See* U.S.S.G. § 2S1.1, Application Note 6. Pursuant to U.S.S.G. §3D1.2(c), where conduct of one count is also a specific offense characteristic of another count, the counts are "closely related" and are grouped together for sentencing purposes.

Count 1: Conspiracy to Possess With the Intent to Distribute and to Distribute a Controlled Substance (Cocaine) - 21 U.S.C. §§ 846 and 841(b)(1)(A)

b) The parties agree that the defendant is personally accountable for between approximately 50 kilograms and 150 kilograms of cocaine, in that the defendant was personally involved with that quantity or it was reasonably foreseeable to the defendant that the conspiracy involved that quantity. The corresponding offense level is 34 pursuant to U.S.S.G § 2D1.1(c)(3).

Count 2: Conspiracy to Commit Promotional and International Promotional Money Laundering - 18 U.S.C. §§ 1956(a)(2)and (h)

c) The defendant's sentence on Count 2 is determined by U.S.S.G. § 2S1.1(a)(1), which establishes a base offense level of 34, the base offense level for the underlying offense in which the defendant was a participant (Count 1).

d) Because the defendant is pleading guilty to a violation of 18 U.S.C. § 1956, there is a 2 level enhancement pursuant to § 2S1.1(b)(2)(B).

e) The corresponding total offense level for Count 2 is 36.

Acceptance of Responsibility

f) The government will recommend a 2-level downward adjustment to the applicable federal sentencing guidelines offense level pursuant to U.S.S.G. §3E1.1(a) if, (i) through the time of sentencing, the government is convinced that the defendant has demonstrated "acceptance of responsibility" for the offense(s) to which the defendant is pleading guilty and all relevant conduct, as defined in U.S.S.G. § 1B1.3; and (ii) the government does not determine that the defendant, after signing this agreement, committed any other federal, state, or local crimes, or engaged in conduct that constitutes "obstruction of justice," as defined in U.S.S.G. §3C1.1.

g) The government will move for a 1-level downward adjustment to the applicable federal sentencing guidelines offense level pursuant to U.S.S.G. §3E1.1(b) if the government is convinced that the defendant has accepted responsibility within the meaning of U.S.S.G. §3E1.1(a) and further assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and

permitting the government and the court to allocate their resources efficiently, and the defendant otherwise qualifies for such adjustment by having a combined offense level of 16 or more before receipt of any acceptance of responsibility adjustment under U.S.S.G. §3E1.1(a).

h) Within the meaning of U.S.S.G. §5C1.2 and 18 U.S.C. §3553(f):

   (1) The defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

   (2) The offense did not result in death or serious bodily injury to any person;

   (3) The defendant was not an organizer, leader, manager, or supervisor of others in the offense and was not engaged in a continuing criminal enterprise.

7)  **Waiver of Rights to Appeal and Collateral Attack:** The defendant waives (gives up) any and all rights, including those conferred by 18 U.S.C. § 3742 and/or 28 U.S.C. §§ 2241 and 2255, to appeal and/or to collaterally attack the following (except that the defendant does not waive the right to raise a claim based on alleged ineffective assistance of counsel):

   a) The convictions resulting from the defendant's guilty plea;

   b) Any claim that the statutes to which the defendant is pleading guilty is unconstitutional;

   c) Any claim that the admitted conduct does not fall within the scope of the statute;

   d) Any sentence to a term of imprisonment of 168 months or less;

   e) Any sentence to a fine within the maximum permitted by law;

   f) Any sentence to a term of supervised release within the maximum permitted by law;

   g) Any order of forfeiture or restitution imposed by the Court that is consistent with governing law and is not contrary to the terms of this agreement.

Nothing in this appeal waiver is meant to be or should be construed as a representation of or agreement concerning the appropriate sentence in this case.

A. **Right to Counsel:** The defendant has a right to assistance of counsel in connection with settlement of this case and understands that right. Defense counsel has advised the defendant of nature of the charges to which the defendant is agreeing to plead guilty and the range of possible sentences.

B. **Waiver of Trial-Related Rights:** The defendant has the following additional constitutional rights in connection with the charges in this case: (i) to be presumed innocent until proven guilty beyond a reasonable doubt; (ii) to plead not guilty; (iii) to trial by jury; (iv) to confront, cross-examine, and compel the attendance of witnesses at trial; (v) to present defense evidence; and (vi) to remain silent and be protected against compelled self-incrimination. The defendant understands that by pleading guilty, the defendant waives (gives up) these rights.

C. **Court Not Bound by Plea Agreement:** This plea agreement is made pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure. The Court is neither a party to, nor bound by this Plea Agreement. The Court may accept or reject this Plea Agreement or defer a decision until it has considered the Presentence Investigation Report prepared by the United States Probation Office. If the Court rejects the provisions of this agreement permitting the defendant to plead guilty to certain charges in satisfaction of other charges, the Court will permit the defendant to withdraw the plea of guilty before sentencing, pursuant to Fed. R. Crim. P. 11(c)(5) & (d).

D. **Court Not Bound by Agreed-Upon Recommendations, Stipulations, and Requests:** If this agreement contains any provisions under Fed. R. Crim. P. 11(c)(1)(B) by which the government agrees to recommend, stipulates, or agrees not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the

federal sentencing guidelines, or a policy statement, or sentencing factor does or does not apply, such a recommendation, stipulation, or request does not bind the Court, which may make independent factual findings by a preponderance of the evidence and may reject such recommendations, requests, and stipulations between the parties. If the Court rejects one or more recommendations, stipulations, or requests, the defendant is not entitled to withdraw the defendant's plea of guilty and is not released from the obligations described in this agreement. Under such circumstances, the government reserves the right to support and defend, in connection with any post-sentencing proceedings, any decision the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations, stipulations, or requests set out in this agreement.

E. **Sentencing:**

   a. **Maximum terms of imprisonment:** The defendant understands that the Court has discretion to impose a sentence within the statutory maximum sentence(s) set out in this agreement. If the defendant is pleading guilty to multiple charges, the Court may be required by law to have the sentences of imprisonment on the convictions resulting from those charges run consecutively to each other. Otherwise, the Court has discretion to have sentences of imprisonment run concurrently or consecutively. *See* 18 U.S.C. § 3584.

   b. **Mandatory minimum terms of imprisonment:** If specified in this agreement, the conviction on one or more charges to which the defendant has agreed to plead guilty may require imposition of a mandatory minimum term of imprisonment. In such cases, the court must impose a term of imprisonment no less than the required mandatory minimum term unless an exception to that requirement applies. Such exception may be dependent on a motion by the government.

c. **Section 851 Enhancements**: The defendant understands that if the government has filed an information against the defendant as provided 21 U.S.C. § 851, alleging that the defendant has one or more final convictions for a felony drug offense, and, as part of this agreement, the defendant has admitted and/or affirmed that the defendant was so convicted, then, by pleading guilty, the defendant will lose the right to attack any sentence the court imposes by challenging any such prior conviction.

d. **Sentencing guidelines:**

    i. The actual sentence to be imposed upon the defendant is within the discretion of the sentencing Court, subject to the statutory maximum and mandatory minimum penalties, as described above, and the provisions of the Sentencing Reform Act and the United States Sentencing Guidelines promulgated thereunder. While the Court is not bound to impose a sentence within the applicable sentencing guidelines range, it must take into account the sentencing guidelines, along with the other factors set forth in 18 U.S.C. § 3553(a).

    ii. Any estimate of the defendant's offense level, criminal history category, and sentencing guidelines range provided before sentencing is preliminary and is not binding on the parties to this agreement, the Probation Office, or the Court. Until the Probation Office has fully investigated the defendant's criminal history, it is not possible to predict with certainty the defendant's criminal history category and, in some cases, the defendant's offense level.

    iii. Under certain circumstances, the defendant's criminal history may affect the defendant's offense level under the federal sentencing guidelines. If the presentence investigation reveals that the defendant's criminal history may support an offense level

different than an offense level stipulated in this agreement, the parties are not bound by any such stipulation as to the defendant's offense level and may advocate with respect to how the defendant's criminal history affects the offense level.

e. **Factual findings:** The defendant understands that the sentencing Court may make factual findings with respect to any and all sentencing factors and issues, including those referenced in the United States Sentencing Guidelines, whether or not such factors or issues have been admitted by the defendant or stipulated by the parties. In making those findings by a preponderance of the evidence, the Court may consider any reliable evidence, including hearsay. The Defendant understands that the sentence imposed may be determined based upon such judicial fact-finding.

f. **Use of the Defendant's Statements:** The defendant understands that the sentencing court may consider any statement that the defendant has made or makes in this Plea Agreement, during the guilty plea, to the Probation Office, and at sentencing when imposing sentence. In addition the government may be able to use the defendant's statements in this agreement and at the guilty plea and at sentencing in any criminal, civil, or administrative proceeding. For example, if the defendant fails to enter a guilty plea (as required by this agreement) or the defendant's guilty plea is later withdrawn or vacated for any reason other than the Court's rejection of this Plea Agreement under Fed. R. Crim. P. 11(c)(5), the government may introduce the defendant's statements into evidence in any prosecution. If, however, the Court rejects this Plea Agreement under Fed. R. Crim. P. 11(c)(5), and the defendant withdraws the guilty plea pursuant to Fed. R. Crim. P. 11(d)(2)(A), the government will not be permitted to use any of the defendant's statements in this Plea Agreement. To the extent that Rule 11(f) of the Federal Rules of Criminal Procedure and/or Rule 410 of the

Federal Rules of Evidence are inconsistent with this paragraph, the defendant waives (gives up) any protections under those rules.

g. **Government's Discretion to Recommend a Sentence:** Unless a stipulation in this agreement explicitly limits the government's discretion with respect to its recommendations at sentencing, this agreement does not prevent the government from urging the sentencing Court to find that a particular offense level, criminal history category, ground for departure, or guidelines range applies; from recommending a specific sentence within the applicable guidelines range as determined by the Court or as urged by the government; or, if the government deems appropriate, recommending that the Court impose a sentence above the applicable guidelines range.

h. **Sentencing-Related Information:** The government has the right to advise the sentencing Court and the Probation Office of any information, in aggravation or mitigation of sentencing, whether or not encompassed within the count(s) to which the defendant has agreed to plead guilty, subject only to the limitation described in U.S.S.G. §1B1.8. No stipulation in this plea agreement limits the obligations of both parties to ensure that the sentencing Court has all information pertinent to its determination of an appropriate sentence. The parties may provide any factual information relevant to sentencing to the Probation Office and/or to the Court, without limitation, before or after the completion of the Presentence Investigation Report. The parties agree that the submission of such information shall not be deemed "advocacy" in violation of any stipulation in this plea agreement.

i. **Supervised Release Term and Conditions:** If the defendant is placed on supervised release, under some circumstances, including the defendant's violation of one or more

supervised release conditions, the Court may extend the term of supervised release, and may modify, reduce, or enlarge the conditions of such release.

F. **Other Adverse Consequences:** The following are some examples of the adverse consequences of pleading guilty other than the sentence imposed by the Court, along with any judicial order of forfeiture and/or restitution:

    a. Conviction of a felony may result in the loss of civil rights, including, but not limited to, the right to vote and the right to possess firearms.

    b. If the defendant is not a United States citizen, such conviction may result in deportation or removal from the United States, may bar readmission to the United States if the defendant leaves the country, and may result in a denial of a pending or future application for citizenship. If the defendant is a naturalized citizen, such conviction may result in denaturalization, followed by deportation or removal from the United States. Under federal law, removal or deportation may be an almost certain consequence of a conviction for a broad range of federal offenses, including, but not limited to, aggravated felonies, as defined in 8 U.S.C. § 1101(a)(43), and crimes of moral turpitude, which includes crimes involving fraud. Removal and other immigration consequences are the subject of a separate proceeding. No one, including the defendant's attorney and the Court, can predict with certainty the effect of the conviction resulting from this agreement on the defendant's immigration status. The defendant understands this uncertainty and nonetheless wishes to plead guilty regardless of any immigration consequences that the guilty plea may entail, even if the consequence is the defendant's automatic removal from the United States.

c. A felony conviction may adversely affect the defendant's ability to hold certain professional licenses and may impair the defendant's ability to do business with federal, state, and local governments or to receive benefits from such governments.

There may be other adverse consequences as well, some of them unforeseeable. It may be difficult or impossible to predict all of the adverse consequences of the defendant's guilty plea. The defendant agrees that any resulting adverse consequences, whether or not foreseen or foreseeable, will not provide a basis for withdrawing from the guilty plea described in this agreement or otherwise challenging the resulting conviction and sentence.

G. **Restitution:** Independent of any agreement to pay restitution, and whether there is any such agreement, the sentencing Court may be required to order that the defendant pay restitution to any victim of the offense(s) of conviction under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A. In addition, the sentencing Court may have the authority to order that the defendant pay restitution to any victim of the offense(s) of conviction pursuant to 18 U.S.C. §§ 3663 & 3664. In any case involving a conviction for a sexual exploitation offense in chapter 110 of title 18 of the United States Code, the Court must order restitution for the full amount of the victim's losses as determined by the court. The victim's losses include, but are not limited to medical services related to physical, psychiatric, or psychological care; physical or occupational therapy or rehabilitation; necessary transportation, temporary housing, and child care expenses; lost income; attorney's fees and other costs; and any other losses suffered by the victim as a proximate result of the offense. The restitution payment will be in addition to any other civil or criminal penalty authorized by law.

H. **Forfeiture:** If the defendant has agreed to forfeiture of assets, the defendant agrees to the following terms and conditions:

a. The defendant hereby forfeits, to the United States, all right, title, and interest of any nature in any and all assets that are subject to forfeiture, including substitute assets, as set forth above, whether those assets are in the possession or control of the defendant, a nominee, or some other third party.

b. The defendant consents to the entry of an order of forfeiture of the assets described above.

c. The defendant is aware that pursuant to Rule 32.2(b)(4)(A) of the Federal Rules of Criminal Procedure, a preliminary order of forfeiture becomes final as to a given defendant at sentencing or at any time before sentencing if the defendant consents. The defendant consents that the preliminary order of forfeiture in this case shall become final as to the defendant before sentencing, as of the date the preliminary order of forfeiture is entered by the Court. The defendant understands that the government, upon entry of the preliminary order of forfeiture, will address any potential third party claims pursuant to Rule 32.2(c), and seek to finalize forfeiture.

d. Forfeiture of the defendant's assets will not satisfy all, or any portion of, a fine, restitution, or other monetary penalty that the Court may impose upon the defendant in addition to forfeiture. Satisfaction of all, or any portion of, any restitution, fine, or other penalty that the Court may impose upon the defendant in addition to forfeiture will not satisfy all, or any portion of, any forfeiture judgment ordered by the Court.

e. In the event that any successful claim is made, by any third party, to the assets described above, the defendant agrees to forfeit substitute assets equal in value to the assets

transferred to any such third party. The defendant agrees that forfeiture of substitute assets shall not be deemed an alteration of the Defendant's sentence.

f.   The defendant agrees to cooperate with the United States by taking whatever steps are necessary to pass clear title to the United States of any forfeitable assets, including but not limited to, surrendering title; completing any documents or legal proceedings required to transfer assets to the United States; and taking necessary steps to ensure that assets subject to forfeiture are not sold, disbursed, expended, destroyed, damaged, hidden or otherwise made unavailable for forfeiture or removed beyond the jurisdiction of the Court.

g.   The defendant waives the right to a jury trial on the forfeiture of assets. The defendant waives all constitutional, legal, and equitable defenses to the forfeiture of assets, as provided by this agreement, in any proceeding, including but not limited to any jeopardy defense or claim of double jeopardy or any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of an excessive fine.

h.   The defendant acknowledges that the government may institute civil or administrative proceedings against any or all of the defendant's forfeitable assets, including, but not limited to substitute assets and any forfeitable assets not identified by the defendant, and agrees not to contest any such forfeiture proceedings.

i.   The defendant represents and warrants that the defendant has no direct or indirect interest in any property, real or personal, or other asset subject to forfeiture by virtue of this plea agreement, other than those listed above.

j.   In the event the government determines that the defendant has breached any condition of this plea agreement, none of the forfeited property shall be returned to the defendant, nor shall the defendant assert any claim to the forfeited property. The defendant shall not

reacquire any forfeited property, directly or indirectly, through family members, nominees, friends, or associates.

**I.** **Determination of Financial Condition and Payment of Interest and Penalties:**

    a. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees fully to disclose all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party.

    b. The defendant will promptly submit a complete, accurate, and truthful financial statement to the United States Attorney's Office, in a form it provides and as it directs.

    c. The defendant authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

    d. Interest and penalties may accrue, as a matter of law, on any unpaid financial obligation imposed as part of the defendant's sentence, from as early as the date of sentencing.

**J.** **Remedies for Breach:**

    a. Should the government determine that the defendant, after the date the defendant has signed this plea agreement, (i) has committed any further crime or violated any condition of release or supervision imposed by the Court (whether or not charged); (ii) has given false, incomplete, or misleading testimony or information; or (iii) has moved to withdraw the defendant's guilty plea for reasons other than those described in this agreement or otherwise has breached any term or condition of this plea agreement or supplemental agreements with the government, the government will have the right, in its sole discretion, to void this agreement, in whole or in part. In the event of such breach, the defendant will

remain obligated to plead guilty and otherwise comply with the terms of this agreement and will not be permitted to withdraw the defendant's guilty plea under this agreement. The defendant will be subject to prosecution for any federal criminal violation of which the government has knowledge, including but not limited to charges that this Office has agreed to dismiss or not to prosecute under this agreement.

b. If the defendant breaches this agreement, the government will have the following remedies, among others, available to it:

  i. To bring prosecution for any federal criminal offenses dismissed or not prosecuted under this agreement. The defendant waives (gives up) any defense or objection to the commencement of any such prosecution that is not time-barred by the applicable statute of limitations as of the date on which the defendant signed this plea agreement, notwithstanding the expiration of the statute of limitations between the signing of the agreement and the commencement of any such prosecution.

  ii. In connection with any such prosecution, any information, statement, and testimony provided by the defendant, and all leads derived therefrom, may be used against the defendant, without limitation and without regard to any rights the defendant may have under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410.

  iii. To utilize any information, statement, or testimony provided by the defendant in any proceeding, including at sentencing, notwithstanding U.S.S.G. §1B1.8;

  iv. To advocate if, and how, any particular adjustment or specific offense characteristic affects the applicable Sentencing Guidelines range without regard to any contrary stipulations contained in this agreement;

    v. To refrain from making any sentencing-related motion favorable to the defendant without regard to any provision in this agreement obligating the government to consider making or make such motion upon fulfillment of certain conditions;

    vi. To urge the sentencing Court to take the defendant's breach into account when imposing sentence;

    vii. To recommend any sentence the government deems appropriate, even if such recommendation is at odds with any stipulation in this agreement.

K. **Limitations:** This agreement is between the United States Attorney's Office for the Northern District of New York and the defendant. References to "the government" in this agreement refer only to that Office. This agreement does not bind any other federal, state, or local prosecuting authorities. Furthermore, this agreement does not prohibit the United States, any agency thereof, or any third party from initiating or prosecuting any civil or administrative proceedings directly or indirectly involving the defendant, including, but not limited to, proceedings by the Internal Revenue Service relating to potential civil tax liability, proceedings relating to the forfeiture of assets, and proceedings by the Department of Homeland Security, Bureau of Citizenship and Immigration Services relating to the immigration status of the defendant.

L. **Agreement Must be Signed; Modifications Must be Written or on the Record:** This agreement, to become effective, must be signed by all of the parties listed below. No promises, agreements, terms, or conditions other than those set forth in this plea agreement will be effective unless memorialized in writing and signed by all parties or confirmed on the record before the Court.

M. **Agreement to Plead Guilty Voluntary:** The defendant acknowledges reading each of the provisions of this plea agreement with the assistance of counsel and understands its provisions. The defendant further acknowledges that the defendant's agreement to plead guilty is voluntary and did not result from any force, threat, or promises (other than the promises in this plea agreement and any written supplemental agreements or amendments).

ANTOINETTE T. BACON
Acting United States Attorney

_____
Emmet J. O'Hanlon
Assistant United States Attorney
Bar Roll No. 519779

10/19/20
_____
Date

_____
HILARIO RENATO MENDOZA BELTRAN
Defendant

10/19/20
_____
Date

_____
Julio Hernandez, III, Esq.
Attorney for Defendant
Bar Roll No. 506756

10/19/20
_____
Date